UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff | § § § § § | CRIMINAL NO.: 4:23CR105 |
| v | § § | |
| SHAQUILE O'NEAL RICHARDS,<br>a/k/a "Shaquile Richards," a/k/a<br>"Shaq," a/k/a "103 Shaq," a/k/a<br>"103shaq_isback," | § § § § § | 18 U.S.C. §924(j)(1) and §2 –<br>Use of a Firearm in<br>Furtherance of a Crime of<br>Violence Resulting in Death |
| ALEXANDRA ELIZABETH NICKS,<br>a/k/a "Bloodbath," a/k/a "Alimo,"<br>a/k/a "Alamo," | § § § § | |
| DEANDRE WATSON,<br>a/k/a Deandre Marcel Watson a/k/a<br>Deandre M. Watson a/k/a "Dre"<br>a/k/a "103 Dre," a/k/a<br>"problemgang_dre," | § § § § § § | |
| MARCUS DEWANE CHRISTOPHER,<br>a/k/a Marcus Christopher, a/k/a<br>Marcus D. Christopher, a/k/a<br>Marcus Dewayne Christopher, a/k/a<br>"Moe," a/k/a "Big Moe," a/k/a<br>"Big Boy," a/k/a "Big Man," a/k/a "<br>"thirdward_moe," | § § § § § § § § | |
| MARQUIS JUWAN ERSKIN,<br>a/k/a Marquis Erskin, a/k/a Marquis<br>J. Erskin, a/k/a Marquis J. Erskin,<br>Marquis Juwa Erskin, a/k/a "Erski,"<br>a/k/a "Bangzz," a/k/a "Cocaine_bangzz," | § § § § § § § | |
| AND | § § | |

1

**MERTROY HARRIS,** §
a/k/a Mertroy Poshad Harris, §
a/k/a Mertroy Roshad Harris, §
a/k/a Troy Harris, a/k/a "Troy," §
a/k/a "Red," a/k/a "2-3," §
§
**DEFENDANTS.** §

**DEFENDANT MARQUIS ERSKIN'S
MOTION TO COMPEL ENFORCEMENT OF THE PLEA AGREEMENT
AND MEMORANDUM IN SUPPORT**

TO THE HONORABLE JUDGE GEORGE C. HANKS, JR.:

COMES NOW MARQUIS JUWAN ERSKIN ("Erskin") by and through his attorneys Gene P. Tausk and Tom Berg who move this Honorable Court to compel the Government to comply with their plea agreement. In furtherance thereof, Erskin would show this Honorable Court as follows:

**I.    CASE HISTORY**

The following is a timeline and brief description of the history of this case, including Erskin's indictment in State court, Erskin's plea agreement, waiver of constitutional rights, and conviction and judgments (attached to this Motion as Exhibit "A") through this current case before this Honorable Court:

- October 16, 2017 – shooting of complaining witness Sam Johnson;

- December 26. 2017 – Erskin arrested on other charges. Erskin has been in custody since this time;

- September 5, 2019 – Erskin is indicted in State Court along with other co-defendants in this matter;

- December 13, 2022 – Waiver of Constitutional rights, judicial confession and plea agreement in State Court. Imposition of a 37 year sentence.

- March 9, 2023 – Federal Indictment for the same conduct for which Erskin pled guilty in State court;

- March 21, 2023 – Designation of Federal Death Penalty Eligibilty;

- March 29, 2023 – Learned Counsel Appointed;

- January 26, 2024 – Jodi Anton added as Government counsel. Kelly Zenon was added on or about October 5, 2023;

- January 29, 2024 – Notice of Government Intent not to seek the death penalty filed with this Honorable Court;

- February 5, 2024 – Learned Counsel removed since death penalty was removed;

- January 15, 2025 – District Court orders all attorneys to inform the Court of available dates for a Preferential Trial setting;

- January 28, 2025 – AUSA Jodi Anton sends possible plea deal to Gene P. Tausk;

- February 6, 2025 - Defendant Watson pleas for 35 years BOP which is accepted by this Honorable Court;

- February 10, 2025 – AUSA Jodi Anton informs counsel that the Attorney General's February 5, 2024 Memorandum requires that the Capital Crimes Committee will review all "not seek" notices and orders a pause on the reply to the plea offer at the DOJ;

- February 11, 2025 – Notice from the AUSA that the Capital Crimes Committee of the Death Penalty is reconsidering all pending cases;

- February 11, 2025 – telephone call with AUSA Jodi Anton suggesting that Erskin enter an open plea to the indictment which does not charge a death penalty offense;

- March 27, 2025 – Gene P. Tausk meets with Erskin and AUSA Jodi Anton to review the plea deal;

- March 27, 2025 – Gene P. Tausk informs this Honorable Court that Erskin wishes for a re-arraignment to accept the plea offer;

- April 1, 2025 – this Honorable Court sets the re-arraignment for May 6, 2025;

- April 10, 2025 – AUSA Jodi Anton gives notice that the Capital Review Committee meeting will be set for either April or May;

- April 11, 2025 – Government files a Motion to Cancel Re-arraigment Setting on May 6, 2025;

- April 21, 2025 – Government Motion granted and Re-arraignment hearing cancelled;

- April 2025 – Learned Counsel reappointed;

- April 30, 2025 – Superseding Indictment charging capital offense with special findings;

- May 1, 2025 – Meeting with Capital Review Committee;

- June 4, 2025 – Status Conference as requested by the Government;

- July 7, 2025 – Jury Trial scheduled (NOTE – Court moved to July 21, 2025).

## II.     ARGUMENTS AND AUTHORITIES

Erskin asks that this Honorable Court enforce the plea agreement between the Government and Erskin. Erskin's right to due process of law will be violated if this Honorable Court does not enforce the plea agreement reached between Erskin and the Government. Erskin's constitutional right to effective assistance of counsel under the Sixth Amendment will be violated if the Government is allowed to withdraw its agreement to allow Erskin to plead guilty to the indictment in an open plea before the Court. Erskin, and counsel, relied on the promise from the Government that this is **not** a death penalty case and that Erskin may enter an "open" guilty plea to the original, but still pending, indictment. This is detrimental reliance and the Government must be called to account to hold to its bargain. For much of this 2025 until the death penalty was brought to the table again, Erskin was under the impression, once again from the Government, that this case was eligible for a plea agreement based on an open plea in court without the death penalty.

The Government's plea proposal was specific, unambiguous in form and was offered to Erskin without any reservation related to additional DOJ approval. Further, the content was reasonable in context, the agreement to proceed to re-arraignment was made by a prosecutor with the authority to make this offer and the offer was made promptly to Erskin so that no confusion was possible. Erskin agreed promptly and unequivocally to its terms and Erskin indicated his assent to his

5

counsel and to the prosecutor. Erskin was entitled to believe that his acceptance of the Government offer, by Erskin and his counsel, was clear, unambiguous and dispositive. The same day that the offer was conveyed, Gene P. Tausk informed this Honorable Court that Erskin wanted a re-arraignment. The Court set this for a re-arraignment on or about April 1, 2025. A true and correct copy of the email sent to this Honorable Court is attached to this Motion and is incorporated by reference as Exhibit "B."

At this point, as this Honorable Court is aware, the plea agreement was withdrawn by the Government. However, this withdrawal has nothing to do with extenuating circumstances affecting the Government or new facts that were unknown when the agreement was reached. As stated, there was a "meeting of the minds" on the plea agreement – one of the fundamental principles of contract law. When there is a plea agreement that is specific, unambiguous and not unreasonable on its face that is offered by the government to a defendant by and through the defendant's counsel or to his face, and relied on by defense counsel, Constitutional fairness demands that if, within a reasonable time after the defendant unequivocally communicates acceptance of the agreement and, unless in the interval, extenuating circumstances affecting the propriety of the proposal that were **unknown** and **not reasonably discoverable** by the Government when the proposal was made have supervened or become known, the agreement may not be withdrawn (emphasis

6

mine). Once accepted, a proposal may not be withdrawn despite unqualified acceptance if there is no other reason than a superior disagrees with an apparently authorized subordinate's judgment in making it. *Cooper v. U.S.*, 594 Fed.2d 12 (1979).

Prosecutors are required to conduct plea negotiations through defense counsel and, as such, the Government's positions and communications regarding plea discussions are explained to the defendants through legal counsel. Fed.R.Civ.P. 11(e)(1). In this case, Gene P. Tausk and Erskin met with the Government to discuss the plea agreement. Therefore, the credibility and integrity of the Government, the effectiveness of defense counsel and the Court's administration of its docket are compromised by this withdrawal of the plea agreement. The sudden withdrawal of the plea agreement with no rational or legal basis for the withdrawal jeopardizes the entire process of criminal defense. The Fifth Amendment guarantee of due process of law and the Sixth Amendment's right to effective assistance of counsel requires that the Government negotiate with scrupulous fairness in seeking guilty pleas to protect substantive and procedural due process. In this instance, Erskin's Constitutional rights will be violated if the Government is allowed to capriciously withdraw the plea agreement.

The criminal justice system depends on plea agreements. *Santobello v. New York*, 404 U.S. 257, 260 92 S.Ct. 495, 498 30 L.Ed 427 (1971) where the court stated:

"….the disposition of criminal charges by agreement between the prosecutor and the accused sometimes loosely called plea bargaining is an essential component of the administration of justice."

In addition, acceptance of a plea agreement may contribute to the successful prosecution of more serious offenders.

Finally, the acceptance of a plea agreement furthers judicial economy and use of limited judicial resources. *U.S. v. Smith*, 648 F.Supp. 495 (1986).

As stated *supra* in this Motion, the Government unilaterally withdrew the plea agreement **after** Erskin indicated that he wished to accept and this Honorable Court even placed a date on its docket when Erskin would be rearraigned. The Government offered no evidence, and continues to offer no evidence, as to why the plea agreement was unilaterally withdrawn. There is no indication from the Government that there now exist extenuating circumstances affecting the Government or new facts that were unknown when the agreement was reached.

With respect to this Honorable Court and to the Government, the only reasons that have been offered by the Government concerning the withdrawal of the plea agreement is that there has been a change in the office of the President of the United States. While this certainly is a material change as far as the Government is concerned, considering that the President is the Executive leader of the Government,

this is not an extenuating circumstance that affects the Government nor is this the introduction of facts that were unknown by the Government when the plea agreement was issued. If this were the case, then the Government would be justified in withdrawing plea agreements every four years based on the outcome of Presidential elections. The chaos that this would create in the criminal justice system would be unparalleled.

The facts of this case indicate that the unilateral withdrawal of the plea agreement is on the same level as the "second guessing" described in *Cooper*. *Cooper* at 19.

This Honorable Court should not reject the plea agreement on the Government's contention that new supervisors are considering second guessing the agreement from the Government. This is, respectfully, an improper reason for withdrawal of the plea agreement.

The Government is required that, at a reasonable time before the trial or before acceptance of the court of a plea of guilty, sign and file with the Court and serve on Erskin a notice: (1) stating that the Government believes that the circumstances of the offense are such that, if Erskin is convicted, a sentence of death is justified under this chapter and that the Government will seek the sentence of death; and, (2) setting forth aggravating facts or factors that the Government, if the defendant is convicted, proposes to prove as justifying the death penalty. 18 U.S.C. §3953.

The Court may permit the prosecutors to amend the notice to "seek" upon a showing of good case, but the statute does not authorize to "not seek" to "seek the death penalty" after an agreement is reached that will dispose of the case and the Court is so notified. *Id*.

The Government now seeks to withdraw its plea agreement with Erskin, for all intents and purposes on the eve of trial, for the sole purpose of allowing superiors in the DOJ to second guess the prior determination "not to seek the death penalty." This is **not** in good cause and is in violation of 18 U.S.C. §3953.

As can be seen in the enclosed exhibits, this case was initiated following Erskin's plea of guilty for events based on the same events present in the indictment before this Honorable Court. Erskin accepted his conviction and sentence of 37 years in the Texas Department of Criminal Justice for the same conduct in State court. Erskin made a judicial confession. Erskin had no notice in State court that a Federal indictment might be presented and there were no objections in State court.

Erskin agreed to waive potential objections and plead guilty to the indictment at the suggestion of the Government to avoid reconsideration of the "DOJ Capital Crimes Committee" and a possible death penalty. The Government now wishes to withdraw from the plea agreement that it itself recommended.

The Government's actions have been both unjust and against the spirit and letter of the law for plea agreements. The Government cannot simply state that there is a new President of the United States and therefore all plea negotiations are withdrawn. This violates that Fifth Amendment's due process clause and the Sixth Amendment's right to effective assistance of counsel. Further, such actions make a mockery of the fairness and integrity of the Government and the judicial process when plea agreements can be withdrawn on a whim with no justification from the Government other than, for all intents and purposes, arguing that "there is a new sheriff in town." Such actions are beneath the dignity of the judicial process.

## CONCLUSION AND PRAYER

For the above-stated reasons, therefore, Erskin respectfully asks this Honorable Court to enforce the agreement to allow Erskin to plead to the indictment as agreed by the parties or to hold an oral hearing to hear the evidence in support of this motion.

**NOTE TO COURT:** This Motion takes liberally the same points by Greg Gladden in his own Motion to the Court for his client, Marcus Dewane Christopher and has borrowed from Mr. Gladden's motion, All arguments made in this Motion independent of Mr. Gladden's motion are the responsibility of Gene P. Tausk.

Respectfully submitted:

THE TAUSK LAW FIRM

/s/ Gene P. Tausk
FED ID: 22203
TBN: 24003035
6525 Washington
Houston, TX  77007
(713) 429-5476
(713) 490-3150 (fax)
gene@tausklawfirm.com

TOM BERG, ATTORNEY AT LAW

/s/ Tom Berg (permission)
TBN: 02189200
4306 Yoakum Blvd Ste 240
Houston, TX 77006-5878
(713) 502-9596
tom@mgblawyers.com

ATTORNEYS FOR MARQUIS ERSKIN, DEFENDANT

## CERTIFICATE OF SERVICE

    I state that a true and correct copy of the foregoing was served upon all counsel of record in this matter by and through the Court's PACER system on June 16, 2025.

/s/ Gene P. Tausk
Gene P. Tausk
